## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____ )
JAMES KEOWN,                                    )
                                                              )
        Petitioner,                             )
                                                              )
v.                                                            )      Civil Action No. 1:19-cv-10354-WGY
                                                              )
STEVEN SILVA,                                   )
Superintendent, MCI Norfolk,       )
                                                              )
        Respondent.                          )
                                                              )
_____ )


## RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION
## TO PETITION FOR A WRIT OF HABEAS CORPUS


Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

Susanne Reardon (BBO # 561669)
Assistant Attorney General
Appeals Division
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2832
(617) 573-5358 (fax)
Susanne.reardon@state.ma.us


Dated:  November 8, 2019

1

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 3

FACTUAL AND PROCEDURAL BACKGROUND ............................................ 3

I.    Procedural History .................................................................................... 3

II.   Factual Overview ...................................................................................... 4

ARGUMENT ....................................................................................................... 7

I.    Standard of Review .................................................................................. 7

II.   Petitioner Failed to Object to Alleged Deficiencies in the Prosecutor's Closing Argument, and the SJC Recognized This Failure, so the Claim is Procedurally Defaulted. .......................................................................... 11

III.  The Claims Contained in Petitioner's Second Argument Regarding the Admission of Prejudicial Evidence Raise Issues of State Law Not Cognizable on Habeas Review, and to the Extent They Raise a Federal Due Process Claim, They Lack Merit. ........................................................................... 16

IV.   The SJC's Rejection of Petitioner's Claim Regarding the Jury Instruction on Inferring Malice from the Use of a Deadly Weapon was a Reasonable Application of Clearly Established Supreme Court Law. ................................. 21

V.    Petitioner's Fourth Amendment Claim Regarding the Search of his Computers is Barred From Federal Habeas Review by *Stone v. Powell*. ........ 23

CONCLUSION .................................................................................................. 25

CERTIFICATE OF SERVICE ............................................................................ 25

## INTRODUCTION

Petitioner, James Keown, was convicted in a Massachusetts court of first-degree murder for the poisoning death of his wife, Julie, on July 2, 2008. The Supreme Judicial Court ("SJC") affirmed the conviction on October 23, 2017. Petitioner raises four claims on habeas review. As discussed below, habeas relief must be denied because his claims are precluded from federal review, are procedurally defaulted, or were resolved by the SJC in a manner that constituted a reasonable application of clearly established Supreme Court caselaw.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History

On November 3, 2005, a Middlesex County grand jury returned an indictment charging that, on diverse dates between June 1, 2004, and September 4, 2004, Petitioner repeatedly poisoned his wife, Julie, ultimately causing her death.

On May 22, 2007, Petitioner filed a motion to suppress physical evidence, including documents and electronic evidence. Following a seven-day evidentiary hearing, Justice Hamlin of the Superior Court denied the motion on February 18, 2008. A jury trial commenced on June 11, 2008, and the jury returned a guilty verdict for first-degree murder on the theory of deliberate premeditation on July 2, 2008.

On appeal, Petitioner raised four claims:  1) the judge's instruction that allowed the jury to infer malice or intent to kill from the use of a weapon which was not inherently dangerous resulted in a due process violation; 2) the judge's denial of a motion to suppress computer forensic search results was error; 3) the judge's

denial of a motion in limine to exclude evidence regarding the defendant's computer username, "Kaiser Soze," and evidence of his prior bad acts and Google searches was an abuse of discretion and violated due process; and 4) the prosecutor's inflammatory misstatements during closing argument violated due process and resulted in a substantial likelihood of a miscarriage of justice. The Supreme Judicial Court ("SJC") affirmed the conviction on October 23, 2017. *Commonwealth v. Keown*, 478 Mass. 232, 84 N.E.3d 820 (2017); S.A.529.

On February 22, 2019, Petitioner filed the instant petition for habeas relief, raising the same four claims. *See* Docket at 1. Respondent filed an answer on May 22, 2019, and a supplemental answer on May 24, 2019. *See* Docket at 1. On August 2, 2019, Petitioner filed a memorandum of law in support of his petition. *See* Docket at 1. Respondent now files this memorandum of law in opposition to the petition.

## II.    Factual Overview

The SJC's recitation of the facts of Petitioner's crime is entitled to the presumption of correctness under 28 U.S.C. § 2254(e)(1), *as amended by* the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000). The AEDPA presumption of correctness applies to all "'basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators.'" *Sanna*, 265 F.3d at 7 (quoting *Bryson v. Ward,* 187 F.3d 1193, 1211 (10th Cir. 1999)). In addition, the presumption of correctness

extends to factual determinations made by both state trial and appellate courts, *RaShad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002), and to any factual findings implicit in the state court's ruling, *LaVallee v. Delle Rose*, 410 U.S. 690, 692 (1972) (applying prior version of statute); *Teti v. Bender*, 507 F.3d 50, 59 (1st Cir. 2007) (stating that the state court's "implicit credibility determinations . . . are exactly the type of factual determinations to which we defer, at least short of any indication of serious error"); *Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). As the First Circuit has noted, "[a] habeas petitioner therefore must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 598 (1st Cir. 2001).

Here, the SJC "summarize[d] the facts as the jury reasonably could have found them" as follows:

> On September 4, 2004, [Petitioner] took his wife, the victim, to Newton-Wellesley Hospital (hospital), where she lapsed into a coma from which she would never recover. The victim died on September 8 after being removed from life support. The medical examiner concluded that the cause of death was both acute and chronic ethylene glycol (EG) poisoning. EG is a transparent liquid that is used in a variety of different solvents, including antifreeze.

> The victim and [Petitioner] were college sweethearts who had been married for seven and one-half years when they moved to Waltham from Missouri in January, 2004. The couple's move was prompted by [Petitioner] falsely telling his wife and his employer that he had been accepted into Harvard Business School. Based on this misrepresentation, the employer, a consulting firm for nonprofit organizations, permitted him to move to Massachusetts and work remotely while he attended classes. The victim, a registered nurse, also

reached an agreement with her employer, a health-related software design firm, to allow her to work remotely.

The victim first showed signs of illess in May, 2004. At the end of July—after weeks of flu-like symptoms, diarrhea, nausea, and malaise—she visited a doctor. The doctor prescribed a medication for gastroesophageal reflux disease, which did not alleviate her symptoms. In early August, the victim visited an urgent care facility, where she was diagnosed with gastritis and continued on the same medication.

The victim's condition continued to deteriorate, and on August 20, 2004, she awoke with slurred speech, an inability to walk, and dizziness. She went to the hospital with [Petitioner]. The doctors at the hospital observed that the victim displayed signs of neurological impairment as well as abnormal kidney function. The doctors did not diagnose EG poisoning at this time but concluded that poisoning of some sort was the likely explanation. During her stay, a doctor asked the victim if she felt safe at home, to which she responded, 'Yes, absolutely.' Shortly after the victim's discharge on August 23, her parents came for a three-day visit and the group of four drove up to Maine. During the drive, [the victim] told her mother that the doctors at the hospital had asked her repeatedly, 'Are you sure your husband isn't giving you something?' The victim laughed when recounting this for her mother and said that she thought the questions were 'completely ridiculous.' When asked by the victim about these questions on the drive, [Petitioner] said he had been 'really getting annoyed' that the doctors kept asking whether the victim had been 'getting some sort of poison.'

On the morning of September 4, 2004, [Petitioner] spoke on the telephone with an on-duty doctor at the hospital about the victim's condition. [Petitioner] told the doctor that the victim was confused, had difficulty walking, and had garbled speech. The doctor told [Petitioner] that the victim should be brought to the hospital immediately, but [Petitioner] did not take the victim to hospital until after 9 P.M. that night. By the time the victim was seen by a physician she was unconscious. The victim died four days later.

During the victim's hospitalization, a doctor had asked [Petitioner] whether the victim had been swallowing tablets or liquids and whether she was suicidal, which are routine questions in cases that involved toxicity. [Petitioner] said that he had not found anything at home indicating that the victim had swallowed something and that she was not suicidal. When the doctor asked him why he had not immediately taken the victim to the emergency room following his morning telephone conversation with the doctor on September 4, [Petitioner] said that the

victim had refused.  However, in the waiting room of the intensive care unit while the victim was still alive, [Petitioner] told the victim's mother that the victim may have accidentally consumed a bottle of antifreeze while on a walk.  [Petitioner] also told this story on September 7 to a State police trooper, who had become involved after the victim's mother reported to police that the victim was suffering from EG poisoning.  [Petitioner] further informed police that the victim was 'talking about death' and, if ruled an accidental death, whether that would be 'the end of the case.'  On that same day, [Petitioner] allowed Waltham police officers to conduct a search of his residence.  The search did not turn up any EG.

Not long after the victim's death, [Petitioner] abandoned his home in Massachusetts, without informing his landlord, and moved back to Missouri at some point in late 2004.  He left many personal effects and computer equipment behind but brought a Sony VAIO laptop computer (laptop computer) with him.  [Petitioner] remained in Missouri until he was arrested in November, 2005.

Following the arrest, [Petitioner's] mother obtained the laptop computer and mailed it to [Petitioner's] attorney in Massachusetts.  A warrant was issued that authorized the examination of the contents of the laptop computer.  The search, which was performed by a computer forensics investigator, yielded important evidence in the Commonwealth's case against [Petitioner].  Prior to trial, [Petitioner] moved to suppress evidence from the search of the laptop computer.  The trial judge denied this motion.

*Keown*, 478 Mass at 234-237, 84 N.E.3d at 825-827; S.A. 535-536.

## **ARGUMENT**

### I.   **Standard of Review**

A petitioner seeking relief pursuant to AEDPA must achieve a steep climb.

*See Cooper v. Bergeron*, 778 F.3d 294, 299 (1st Cir. 2015), (citing AEDPA) (codified

in part at 28 U.S.C. § 2254); also citing *Johnson v. Williams*, 133 S. Ct. 1088, 1094

(2013); *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011).  Pursuant to AEDPA, a

petitioner can secure relief on a claim adjudicated on the merits in the state system

"only if the state court's rejection of his claim was either 'contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States'" under § 2254(d)(1), or "was premised on an 'unreasonable determination of the facts' within the meaning of § 2254(d)(2)." *Brumfield v. Cain*, 135 S. Ct. 2269, 2275-76 (2015) (quoting 28 U.S.C. §§ 2254(d)(1), (2)). "Only a legal or factual error that is objectively unreasonable will warrant relief." *Cooper*, 778 F.3d at 299, citing *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013); also citing *Hensley v. Roden*, 755 F.3d 724, 731 (1st Cir. 2014).

Section 2254(d) thus demands an inquiry into whether a prisoner's "claim" has been "adjudicated on the merits" in state court; if it has, AEDPA's highly deferential standards apply. *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015), citing *Richter*, 562 U.S. at 103. The United States Supreme Court has re-affirmed that "a state court need not cite or even be aware of [the Supreme Court's] cases" to be entitled to deference under § 2254(d). *Richter*, 562 U.S. at 98, citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Under *Richter*, absent an indication that the SJC resolved the federal issue on some other basis, this Court must presume that the issue was adjudicated on the merits and apply AEDPA's deferential standard of review. *Id.* at 98-99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary").

A state court's decision is contrary to clearly established federal law if it "contradicts the governing law set forth in the Supreme Court's cases or confronts a

set of facts that are materially indistinguishable from a decision of the Supreme Court but reaches a different result." *Companonio v. O'Brien*, 672 F.3d 101, 109 (1st Cir. 2012) (quoting *John v. Russo*, 561 F.3d 88, 96 (1st Cir. 2009)); *accord, e.g.*, *Gaskins v. Duval*, 640 F.3d 433, 451-452 (1st Cir. 2011).

Finally, even when a state court applies a standard that is contrary to clearly established federal law, a petitioner still is not automatically entitled to relief. Instead, the petitioner must demonstrate that he "'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Aspen v. Bissonnette*, 480 F.3d 571, 576 (1st Cir. 2007) (quoting 28 U.S.C. § 2254). "This means that a petitioner must show that his underlying detention is unlawful and not just that the state court employed faulty reasoning in his case." *Id.* The petitioner must demonstrate "'that Supreme Court precedent requires an *outcome* contrary to that reached by the relevant state court.'" *Id.* (quoting, with added emphasis, *O'Brien v. Dubois*, 145 F.3d 16, 24-25 (1st Cir. 1998), *abrogated on other grounds, McCambridge v. Hall*, 303 F.3d 24 (1st Cir. 2002) (en banc)).

Ultimately, "[w]hether habeas review is under the deferential standard provided in § 2254(d)(1) or under the de novo standard . . . , state habeas petitioners may not seek release on federal law grounds which have yet to be clearly established." *Kater v. Maloney*, 459 F.3d 56, 63-64 (1st Cir. 2006).

 "An unreasonable application occurs when 'the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case.'" *Bebo v. Medeiros*, 906 F.3d 129, 134 (1st Cir. 2018) (alteration in original) (quoting *White v. Woodall*, 572 U.S. 415, 425 (2014)).

9

Under AEDPA, "a decision can still be 'reasonable' even if the reviewing court 'concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.'" *Shuman v. Spencer*, 636 F.3d 24, 30 (1st Cir. 2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). It is not "unreasonable" unless the petitioner has "show[n] that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 102-03. "If th[ese] standard[s] [are] difficult to meet, that is because [they] w[ere] meant to be." *Id.* at 104. They "reflect[ ] the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.*

"[P]etitioner's challenge to a decision based on a factual determination will not succeed if the petitioner merely evidences that the state court committed error. Instead, he must further establish that the state court committed unreasonable error." *Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003); *see also Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003) ("[A] federal habeas court may not grant habeas relief under § 2254(d)(2) merely because it disagrees with a state trial court's factual determination.").

**II.    Petitioner Failed to Object to Alleged Deficiencies in the Prosecutor's Closing Argument, and the SJC Recognized This Failure, so the Claim is Procedurally Defaulted.**

It is well-established that federal habeas review of a claim is precluded when the state court has decided that issue on the basis of an adequate and independent state-law ground. *See Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Harris v. Reed,* 489 U.S. 255, 262 (1989); *Wainwright v. Sykes,* 433 U.S. 72, 81 (1977). "This independent and adequate state grounds doctrine 'is grounded in concerns of comity and federalism.'" *Costa v. Hall,* 673 F.3d 16, 23 (1st Cir. 2012) (quoting *Coleman,* 501 U.S. at 730).

The failure to properly raise an issue at the earliest possible time constitutes an adequate and independent state-law ground, as does the failure to lodge a contemporaneous objection at trial. *See, e.g., Coleman,* 501 U.S. at 729-730 (untimely filing of notice of appeal); *Murray v. Carrier,* 477 U.S. 478, 481-482 (1986) (failure to raise claim on appeal); *Wainwright,* 433 U.S. at 86-87 (contemporaneous objection). For habeas purposes, the federal courts do not infer waiver of a procedural bar "unless the state appellate court has made it 'reasonably clear that its reasons for affirming a conviction rest upon its view of federal law.'" *Tart v. Massachusetts,* 949 F.2d 490, 496 (1st Cir. 1991) (quoting *Doucette v. Vose,* 842 F.2d 538, 540 (1st Cir. 1988)). *See also Puleio v. Vose,* 830 F.2d 1197, 1200 (1st Cir. 1987). Indeed, habeas review is allowed only if "the relevant state court decision . . . fairly appear[s] to rest primarily on federal law or [is] interwoven with [federal] law." *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991); *Coleman*, 501 U.S. at 734, 735.

11

In this case, the SJC clearly rejected Petitioner's first claim, regarding alleged improprieties in the prosecutor's closing argument, based on an independent and adequate state-law ground.[1]  The court specifically found that Petitioner raised the claim "for the first time on appeal" and reviewed it under a substantial likelihood of a miscarriage of justice standard (S.A. 542).  *See Janosky v. St. Amand*, 594 F.3d 39, 44 (1st Cir. 2010) ("We have held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts").[2]

"[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice' attributable thereto, or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris,* 489 U.S. at 262.  *Accord Coleman*, 501 U.S. at 749-50.  The Supreme Court has recognized three objective factors, external to the defense, that are sufficient to

---

[1]  Petitioner specifically argued that the prosecutor made the following two prejudical mistakes in his closing argument: 1) he alleged that a computer search of "ethyelene glycol death human" was made by the user name "Kaiser Soze" and 2) he quoted extensively from the victim's statements in her e-mails, relying on them for their truth instead of the limited purpose of state of mind under which they were admitted.

[2] By nevertheless reviewing Petitioner's claim to determine whether there was a substantial likelihood of a miscarriage of justice, Massachusetts's standard for unpreserved claims in first-degree murder cases, the SJC did not waive Petitioner's procedural default. *E.g., Cruz v. Maloney*, 152 F. App'x 1, 5 (1st Cir. 2005) (unpublished) (stating rule in context of first-degree murder conviction).

constitute cause to excuse a procedural default: (1) the factual or legal basis for a claim was not reasonably available; (2) there was interference by state officials that made compliance with the state procedural rules impracticable; or (3) there was attorney error rising to the level of constitutionally ineffective assistance of counsel. *Coleman*, 501 U.S. at 751; *Murray*, 477 U.S. at 488. *See also Yeboah-Sefah v. Ficco,* 556 F.3d 53, 76, n.4 (1st Cir. 2009). "To scale th[e] [prejudice] wall, a petitioner must demonstrate not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." (quotation and ellipsis omitted) *Ortiz v. DuBois*, 19 F.3d 708, 714 (1st Cir. 1994). The "miscarriage of justice" exception to a showing of procedural default is reserved for "truly exceptional cases," *Walker v. Russo*, 506 F.3d 19, 21 (1st Cir. 2007), and the petitioner must demonstrate "a constitutional violation that has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Glacken v. Dickhaut*, 585 F.3d 547, 551 (1st Cir. 2009).

Petitioner has not attempted to show cause for the defaulted claims. *See Hodge v. Medonsa*, 739 F.3d 34, 43 (1st Cir. 2013)(finding procedural default bar applicable where petitioner ma[de] no attempt to show 'cause' and 'actual prejudice' on appeal" and did not "specifically argue that 'failure to consider the claim[ ] will result in a fundamental miscarriage of justice'").  See also *Lamartine v. Ryan*, 215 F. Supp. 3d 189, 193 (D. Mass. 2016) (Young, J.) ("A petitioner's failure to explain the rationale and support for his entitlement to habeas on a particular ground in his memorandum can result in waiver of that claim.").

Nor can Petitioner show prejudice from the alleged errors. The court found that the statements contained in the victim's e-mail messages were admitted for an admissible purpose: to show that the victim's state of mind was inconsistent with suicide.  The prosecutor used the statements for precisely this purpose in his closing argument and therefore did not commit error, much less cause any undue prejudice (S.A. 542).

The SJC acknowledged that the prosecutor did make two mistakes with regard to the computer searches.  First, he erroneously stated that there was a search for "ethylene glycol death human" when the actual search was for "antifreeze death human" (S.A 542).  The SJC concluded that this did not create a substantial likelihood of a miscarriage of justice because the jury had been informed that ethylene glycol was commonly found in antifreeze.  *Id*.  Second, the prosecutor attributed the above search to the user name "Kaiser Soze," but there was no evidence under which username the search occurred.  *Id*.  The SJC found that the prosecutor intended to direct the jury to draw the permissible inference that Petitioner had conducted the search.  Moreover, the jury was instructed several times regarding the permitted use of the "Kaiser Soze" username and was told both before and after closing arguments that counsels' arguments were not evidence and that, if either party referred to facts not in evidence, the jury should disregard them (S.A. 542).  The comments, considered in the context of the entire closing argument and in light of the limiting instructions did not infect the trial with unfairness. *See Ortiz v.*

*DuBois,* 19 F.3d at 714 (to show prejudice, a petitioner must show that the errors worked to his actual and substantial disadvantage).

Finally, Petitioner cannot make a showing of actual innocence. The Commonwealth's theory was that Petitioner had poisoned his wife to hide from her the fact that the couple was on the edge of financial ruin and to reap the benefits of her life insurance policy.  The evidence to support this theory included the facts that:  Petitioner had embezzled from his employer and had been fired; financial records showed that the couple's finances were nearly depleted; and the victim's e-mail messages to friends showed that she was not aware that Petitioner had been fired.  The prosecution also presented:  evidence of a number of searches on Petitioner's laptop which queried "antifreeze human death" and "poison recipe"; evidence that the taste of ethylene glycol can be masked by putting it in Gatorade and Petitioner had insisted that the victim drink Gatorade in the weeks and months before her death; and the medical examiner's testimony that the victim's symptoms were consistent with having been given small doses of EG over a lengthy period of time and then a lethal dose prior to her final admission to the hospital. *Keown*, 478 Mass. at 236, 84 N.E.3d at 826-827; S.A. 536. In fact, the SJC characterized the evidence of Petitioner's guilt as "overwhelming." *Id.* at 246, 84 N.E.3d at 834 n.14; S.A. 544..

If this Court were to find that relief was denied in the state system on grounds other than procedural ones and proceeds to evaluate the merits of Petitioner's claim, then application of the standard of 28 U.S.C. § 2254(d) would be warranted.  *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented

to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary"). Applying that standard, this Court should conclude that the SJC's rejection of the claim was not contrary to, and did not involve an unreasonable application of, clearly established Supreme Court precedent, for all the reasons offered in the discussion of prejudice above. *See, e.g.*, *Darden*, 477 U.S. 168 (1968) (prosecutor's closing argument which included offensive comments reflecting an emotional reaction to the case did not deprive petitioner of fair trial where the statements were in response to the defense' statement, where the judge instructed the jury that their verdict must be based on the evidence alone and where the weight of the evidence against petitioner was "heavy").

### III. The Claims Contained in Petitioner's Second Argument Regarding the Admission of Prejudicial Evidence Raise Issues of State Law Not Cognizable on Habeas Review, and to the Extent They Raise a Federal Due Process Claim, They Lack Merit.

Petitioner cannot obtain relief based on his Second Argument, in which he contends that the denial of several motions in limine and the subsequent admission of allegedly prejudicial evidence over objection. His arguments are all based on allegations that the trial judge abused her discretion because the prejudicial effect of the evidence outweighed its probative value. *Cf. Coningford v. Rhode Island*, 640 F.3d 478, 483 (1st Cir. 2011)(stating, in evaluating whether claim was exhausted at state level, the fact that Petitioner "add[ed] a conclusory assertion that [ ] challenged evidence rendered his trial unfair was not enough to transmogrify his

16

garden-variety claim of evidentiary error into the functional equivalent of a claim of constitutional magnitude"). The SJC, relying only on state common law, held that the trial judge did not abuse her discretion in admitting the challenged evidence. Therefore, there could not have been a due process violation.

The admissibility of evidence in state trials is governed by state law. *See, e.g.*, *Evans v. Thompson*, 465 F. Supp. 2d 62, 79 (D. Mass. 2006) (observing that admission of evidence in state-court criminal trial is determined by state evidentiary law). It is a fundamental principle of the law of federal habeas corpus that no habeas claim exists as to state criminal convictions unless the alleged errors are violations of the Constitution, laws, or treaties of the United States. *Kater v. Maloney*, 459 F.3d 56, 61 (1st Cir. 2006). It is not the province of a federal habeas court to reexamine a state court's determinations of state-law questions. *Lewis v. Jeffers*, 497 U.S.764, 780-81 (1990). While "[a]n erroneous evidentiary ruling that results in a fundamentally unfair trial may constitute a due process violation and thus provide a basis for habeas relief[,] . . . to give rise to habeas relief, the state court's application of state law must be so arbitrary or capricious as to constitute an independent due process . . . violation." *Lyons v. Brady*, 666 F.3d 51, 55-56 (1st Cir. 2012) (citations omitted). To the extent that Petitioner is challenging the SJC's ruling that the trial judge's evidentiary rulings were correct, his claims are barred under the principles cited above.

Petitioner's attempt to transform his state law evidentiary claims into federal constitutional due process claims must also fail. In deciding the first alleged evidentiary error, the SJC held that the admission of Petitioner's computer

username, "Kaiser Soze," was proper to show possession, custody, and control of the laptop on which significant incriminating evidence was found.[3]  Evidence of the username did not cause undue prejudice to Petitioner where the prosecutor did not focus on who "Kaiser Soze" was and where the judge instructed the jury that the name was admitted solely on the issue of the use and control of the computers. *Keown*, 478 Mass. at 243; S.A. 539.  *See Kater*, 459 F.3d at 64-65 (it is a very rare case where the admission of evidence is so prejudicial as to violate federal due process rights).

The SJC also rejected the second claim, in which Petitioner alleges that the prejudice caused by the admission of two prior bad acts outweighed the probative value of the evidence.  The first instance of prior misconduct involved certain fraud and embezzlement that Petitioner perpetrated against his employer in Missouri and which resulted in his termination from that post.  The second involved his forgery of documents and misrepresentations regarding his alleged admission to Harvard Business School.  Such evidence, as the SJC recognized, went directly to Petitioner's motive, intent, and state of mind, especially in light of the Commonwealth's theory of the case that Petitioner killed his wife to reap the financial benefits of her life insurance policy and to conceal their dire financial straits. The judge also specifically instructed the jury that they should not use the past events to decide

---

[3] As the SJC observed, "Kaiser Soze is a fictional character from the 1995 crime film 'The Usual Suspects' who is a criminal mastermind and supposedly murdered his wife and some of his children rather than allow them to be kidnapped." *Keown*, 478 Mass. at 242.  "[I]t was [Petitioner] who chose to use the name of a fictional criminal mastermind as his username." *Id.* at 243.

that Petitioner had a "criminal personality." *Keown*, 478 Mass. at 243-244; S.A. 539-540.  *See Coningford*, 640 F.3d at 485 (habeas relief denied where admission of prior bad act evidence was "well within the universe of plausible evidentiary rulings"). There was no undue prejudice.

Petitioner's next evidentiary claim challenges the admission of statements made by the victim in e-mails and her Internet browsing history shortly before her death. This evidence included a spreadsheet found on the victim's laptop computer listing questions relating to kidney disease and pregnancy options; her internet search history that included research on her illness and her doll-making hobby; and e-mail messages from the victim to friends during the week before her final hospitalization showing a positive outlook on her failing health. Keown, 478 Mass. at 245, 84 N.E.3d at 833; S.A. 540. The SJC held that this evidence was properly admitted to show that the victim's state of mind was inconsistent with suicide and and so the court did not reach the issue of prejudice. Petitioner argued in both his opening and closing statements that the victim may have ingested ethylene glycol in an attempt to commit suicide so the prosecution was entitled to respond to this theory. *See, e.g. United States v. Russell*, 662 F.3d 831, 844 (7th Cir. 2011) ("the district court did not abuse its discretion in concluding that the defense opened the door to evidence bearing on his motive and intent, regardless of whether such evidence was relevant in the first instance"). The trial judge also gave a limiting instruction at the close of all the evidence that the victim's verbal statements and e-mails were admissible only as to her state of mind. (Tr. XIII/117-118).

Petitioner also alleged that some of the victim's e-mails indicating that she was unaware of his embezzlement, describing Petitioner as a "wonderful person" and telling a friend that Petitioner "keeps wanting me to drink Gatorade" were improperly admitted to evaluate Petitioner's motive. The SJC held that, even if this was error because the Commonwealth did not show that Petitioner knew how the victim felt, the evidence was not prejudicial in light of its "innocuous" and "cumulative" nature. *Keown*, 478 Mass. at 245-246 & n.14; S.A. 540-541. *See Abrante v. St. Amand*, 595 F.3d 11, 19 (1st Cir. 2010) ("To be a constitutional violation, a state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible.")

Finally, the SJC's decision that evidence of Google searches on a laptop computer regarding poisons in general and "antifreeze death human" was properly admitted, even though there was no direct evidence that Petitioner conducted the searches because a jury could reasonably infer that Petitioner had done so did not amount to a due process violation. *Keown*, 478 Mass. at 247-248, 84 N.E.3d at 834; S.A. 541. Where the victim used only other computers provided by her employer, where Petitioner took this particular laptop with him when he absconded to Missouri (an act suggestive of an effort to conceal evidence, thereby manifesting consciousness of guilt), and where the jury heard no evidence that any other person had access to the laptop at the relevant time, the inference that Petitioner was behind the particular searches at issue bordered on inescapable. *See Morgan v. Dickhaut*, 677 F.3d 39, 47 (1st Cir. 2012)(conviction may be supported by circumstantial evidence alone). There was no due process violation.

IV.   **The SJC's Rejection of Petitioner's Claim Regarding the Jury Instruction on Inferring Malice from the Use of a Deadly Weapon was a Reasonable Application of Clearly Established Supreme Court Law.**

The SJC reasonably held that the judge's instructions, allowing the jury to infer an intent to kill based on the use of poison, did not lower the Commonwealth's burden of proof. In her final instructions, the judge told the jury:

> Malice, as it applies to deliberately-premeditated murder, means an intent to cause death. As a general matter, you **may** infer that a person who intentionally uses a dangerous weapon on another is acting with malice.

(Tr. XIII/126-127)(emphasis added).

The judge then identified the weapon used in this case as poison and further instructed that "a dangerous weapon is an item that is capable of causing serious injury or death as used." (Tr. XIII/127).

It is well-settled that a defendant has a due process right to be convicted only on proof by the prosecution of every element of a crime beyond a reasonable doubt. *Francis v. Franklin*, 471 U.S. 307, 313 (1985). "Every instruction must be judged on its own terms, including the language used and the context of facts and arguments offered in the case." *Farley v. Bissonnette*, 544 F.3d 344, 347 (1st Cir. 2008). Under Massachusetts common law, the question of whether an item is dangerous as used is for the jury to determine. In a murder case, the jury is permitted to infer malice from the use of a dangerous weapon if that dangerous weapon is an item that is capable of causing serious injury because it is a reasonable inference that the person who uses such an item intends to kill. *Id.* at 250; S.A. 543. The instructions

21

at issue did not direct the jury to presume an essential element of murder and therefore fell within constitutional boundaries.

The First Circuit has characterized the inference that malice may be inferred from the use of a dangerous weapon as a "traditional common-law inference deeply rooted in our law," in rejecting a similar claim on habeas.  *McInerney v. Berman*, 621 F.2d 20, 24 (1st Cir. 1980)("We agree with the Massachusetts Supreme Judicial Court that (a) judge does not violate constitutional principles of due process by advising the jury that, if they think it reasonable, they may infer the existence of malice from the fact, proved beyond a reasonable doubt, that a defendant shot the victim, stabbed him, or otherwise harmed him with a deadly weapon.")(quotation omitted). *See also Figueroa v. Gelb*, No. CV 13-13008-IT, 2016 WL 3147354, at *12 (D. Mass. Apr. 20, 2016), *report and recommendation adopted*, No. 13-CV-13008-IT, 2016 WL 3149652 (D. Mass. June 3, 2016); *Obershaw v. Lanman*, No. CIV.A.03-10201-RWZ, 2005 WL 2065322, at *4 (D. Mass. Aug. 22, 2005), *aff'd on other grounds*, 453 F.3d 56 (1st Cir. 2006)(rejecting similar claims on habeas review).

The SJC reasonably applied clearly established Supreme Court caselaw regarding the Commonewealth's burden of proving each element beyond a reasonable doubt.  The jury instruction was in keeping with *Francis v. Franklin,* 471 U.S. 307, where it allowed the jury to make permissive inferences but did not relieve the Commonwealth's burden.  *See Torres v. DuBois*, 174 F.3d 43, 47 (1st Cir. 1999) (denial of federal habeas relief affirmed where jury instruction on mitigating evidence did not relieve Commonwealth's burden of proof or inappropriately shift any burden of proof to the petitioner).

22

## V.     Petitioner's Fourth Amendment Claim Regarding the Search of his Computers is Barred From Federal Habeas Review by *Stone v. Powell.*

Petitioner's claim alleging a Fourth Amendment violation resulting from the search of his computers is not cognizable on habeas review.  In *Stone v. Powell*, 428 U.S. 465, 489-90 (1976), the Supreme Court explained that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial."  Thus, *Stone* makes clear that federal habeas courts cannot ordinarily review a state court's disposition of a prisoner's Fourth Amendment claims.  *Sanna*, 265 F.3d at 8.  The only exception is when the "habeas petitioner had no realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system."  *Id.*  The burden of proving the lack of such an opportunity lies with the petitioner.  *Id.*

"'[A] full and fair opportunity' to litigate means that the state has made available to defendants a set of procedures suitably crafted to test for possible Fourth Amendment violations. . . .  So long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of such a set of procedures, a federal habeas court lacks the authority, under *Stone*, to second-guess the accuracy of the state court's resolution of those claims."  *Id.* at 9.  Accordingly, "the mistaken outcome of a state court suppression hearing, standing alone, cannot be treated as a denial of the opportunity fully and fairly to litigate a Fourth

Amendment claim (and, thus, cannot open the door to federal habeas review)." *Id.*,
citing *Willet v. Lockhart*, 37 F.3d 1265, 1270 (8th Cir. 1994) (en banc).

The search and seizure at issue was the subject of full and fair litigation in
state court, including a full appeal. The Superior Court judge issued a reasoned
decision following a lengthy evidentiary hearing. She decided that the search
warrant was supported by probable cause that evidence related to the homicide
would be found on the computers and the affidavit provided adequate information to
circumscribe the search with sufficient particularity. (S.A. 156-271). On direct
appeal, the SJC reviewed Petitioner's claim and held that the motion judge did not
err in denying the motion to suppress. (S.A. 536-539). The record clearly
demonstrates that Petitioner thoroughly litigated his Fourth Amendment claim in
the state courts.

Although Petitioner recognizes that a federal habeas court "does not normally
review questions of search and seizure under the Fourth Amendment" (Br. at 30),
he argues that digital evidence should be analyzed differently because it cannot be
analogized to physical spaces (Br. at 38-41). His argument does not account for the
rationale underlying the *Stone v. Powell* rule. The *Stone* Court reasoned that: "the
primary justification for the exclusionary rule . . . is the deterrence of police conduct
that violates Fourth Amendment rights"; allowing for federal collateral review of
search-and-seizure claims would only minimally advance that prophylactic purpose;
and any resulting benefits "would be outweighed by the acknowledged costs to other
values vital to a rational system of criminal justice." 428 U.S. at 482-96; *accord*

*Sanna*, 265 F.3d at 8.  The Court's reasoning does not apply any less where the evidence at issue is in digital form.

Thus, this claim is barred from federal habeas review, and Ground Four of the petition should be denied.  *See Sanna*, 265 F.3d at 8.

## CONCLUSION

For the foregoing reasons, the petition for habeas relief should be denied.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

 Susanne Reardon
Susanne Reardon
(BBO # 561669)
Assistant Attorney General
Appeals Division
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2832
(617) 573-5358 (fax)
November 8, 2019                                 Susanne.Reardon@state.ma.us

## CERTIFICATE OF SERVICE

I hereby certify that this document was served upon

James Keown, pro se
MCI Norfolk
P.O. Box 43
2 Clark Street
Norfolk, MA 02056

by first class mail, postage prepaid, on November 8, 2019.

/s/  Susanne Reardon
Susanne Reardon